Robert Tauler (SBN 241964)
robert@taulersmith.com
J. Evan Shapiro (SBN 218481)
eshapiro@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Dana Hughes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANA HUGHES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>SENTRY INSURANCE COMPANY, a Wisconsin corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-06693-SRM-PD<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF DANA HUGHES'S OPPOSITION TO DEFENDANT SENTRY INSURANCE COMPANY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 8, 2025<br>Time: 1:30 p.m.<br>Courtroom: 5D<br><br>Action Filed: July 22, 2025<br>Trial Date: None Set |

# TABLE OF CONTENTS

**I. INTRODUCTION ........................................ 6**

**II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ........................................ 8**

**III. LEGAL STANDARD ........................................ 10**

**IV. THE COURT SHOULD DENY THE MOTION TO DISMISS ........................................ 11**

*A. Defendant's Position that the CIPA Provisions at Issue Here Are Limited To Telephone Technology Is Erroneous and Unsupported by Authority. ........................................ 11*

1. The Broad Language of §§ 638.50-51 Encompasses Prohibited Devices Comprised of Software on Websites. ........................................ 11

2. Defendant's Statutory Text and Structure Argument, Grounded in the Language in Penal Code §§ 638.52-53, Fails. ........................................ 14

3. Defendant's Citation to the Legislative History of §§ 638.50-51 is Unavailing. 16

4. Application of § 638.51 to Websites Is Consistent with the Legislature's Intent and Would Not Have Unreasonable Results. ........................................ 18

*B. The Exemption Set Forth In § 638.51(b)(1) Does Not Apply Here. ........................................ 19*

*C. Plaintiff Has Article III Standing and Statutory Standing Under CIPA. ........................................ 21*

1. Plaintiff Sustained a Violation of Her Right of Privacy, a Constitutionally Cognizable Injury Under Governing Caselaw. ........................................ 21

2. Substantial Authority Supports the Finding That Plaintiff Has Article III and Statutory Standing Based on Her Allegations Surrounding Her Data Exposure to Demandbase Through the Website. ........................................ 22

**V. CONCLUSION ........................................ 25**

# TABLE OF AUTHORITIES

Cases

*Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 (July 31, 2024) .......... 13

*Application of U.S. of Am. For an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) .......... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 9

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .......... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 9

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 23

*Cal. Tchrs. Assn. v. Governing Bd. of Rialto Unified Sch. Dist.*, 14 Cal. 4th 627 (1997) .......... 10

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) .......... 9, 18

*Cantu v. Tractor Supply Co.*, No. 2:23-CV-3027-HDV-JC, 2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) .......... 22

*Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) .......... 10

*Casillas v. Transitions Optical, Inc.*, Case No. 23STCV30742 (Cal. Sup. Ct. April 23, 2024) .......... 24

*Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 LX 193005 (C.D. Cal. Apr. 3, 2025) .......... 12

*Copley Press, Inc. v. Superior Court*, 39 Cal. 4th 1272 (2006) .......... 17

*D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 23

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) .......... 10

*Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .......... 23

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 LX 273067 (N.D. Cal. July 14, 2025) .......... 12

*Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024) .......... 13

*In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589 (9th Cir. 2020) .......... 20, 21, 22

*In re Google Inc. Cookie Placement Consumer Privacy Litig*., 934 F.3d 316 (3rd Cir. 2019) .......... 21, 22

*In re Lares*, 188 F.3d 1166 (9th Cir. 1999) .......... 10

*In re Reineger* 184 Cal. 97 (1920) .......... 17

*Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024) .......... 13

*Kavanaugh v. W. Sonoma Cty. Union High Sch. Dist.*, 29 Cal.4th 911 (2003) .......... 15

*Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) .......... 23

*Lesh v. Cable News Network, Inc.*, No. 24 CIV. 03132 (VM), 2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) .......... 24

*Limon v. Circle K Stores, Inc.*, 84 Cal.App.5th 671 (2022) .......... 24

*Mirmalek v. Los Angeles Times Communs. LLC*, No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 12, 18, 24

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024) .......... 12

*Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) .......... 21

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) .......... 20

*People v. Snook*, 16 Cal. 4th 1210 (1997) .......... 10

*Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024) .......... 13

*Riganian v. LiveRamp Holdings, Inc.,* No. 25-cv-00824-JST, 2025 LX 251568 (N.D. Cal. July 18, 2025) ........ 12

*Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811 (Cal. Sup. Ct. July, 9, 2024) ........ 24

*Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 LX 103944 (S.D. Cal. Feb. 12, 2025) ........ 12

*Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011) ........ 10

*Smith v. LoanMe*, 11 Cal. 5th 183 (2021) ........ 6, 17

*United Medical Management Ltd. v. Gatto* 49 Cal. App. 4th 1732 (2016) ........ 10

*United States v. Rosenow*, 50 F.4th 715 (9th Cir. 2022) ........ 11

*Vishal Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 11, 23

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 23

Statutes

18 U.S.C. § 3127(3) ........ 14

Cal. Civ. Code § 1798.17 ........ 18

Cal. Penal Code § 629.51(a)(2) ........ 11

Cal. Penal Code § 630 ........ 11, 17

Cal. Penal Code § 638.50(c) ........ 5

Cal. Penal Code §§ 1546 ........ 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The action addresses the scourge of digital "fingerprinting" by data brokers surveilling consumers in this state, "whose core business is to collect, aggregate, analyze, and sell or license personal and non-personal data about individuals and organizations." Complaint, ECF No. 15, ¶ 18. It alleges that Defendant Sentry Insurance Company ("Defendant" or "Sentry") violated California's Trap and Trace statute, California Penal Code § 638.51, by installing and using the software of at least one data broker, Demandbase, on its website – which is located at https://sentry.com/ (the "Website"). Sentry "offers insurance plans to businesses and related news, information and resources" through the Website, which it operates, owns and controls. First Amend. Complaint, filed on August 28, 2025 ("FAC"), ECF No. 15, at ¶ 11.

Section 638.51 proscribes the use or installation of a "trap and trace device" by any person "without first obtaining a court order" under other CIPA provisions. Cal. Penal Code § 638.51. Under Penal Code § 638.50(c), a "[t]rap and trace device" is "a [ . . . ] process that captures the incoming electronic [ . . . ] impulses that identify [ . . . ] routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication [ . . . ]." Cal. Penal Code § 638.50(c).

Sections 638.50-51 are found within the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* ("CIPA") – a bulwark against the encroachment of individuals' privacy in an increasingly technology-driven world. As the California Supreme Court has

explained, "[i]n enacting the Invasion of Privacy Act (Pen. Code, § 630 *et seq.*), the Legislature declared in broad terms its intent to protect the right of privacy of the people of California from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society." *Smith v. LoanMe*, 11 Cal. 5th 183, 199 (2021).

Here, Plaintiff alleges that when she visited the Website in February 2025, data broker software installed and used by Defendant, "fingerprinted" her by collecting and then processing her private information. This occurred without her consent, her having been informed about it, or any court order authorizing it.

Sentry seeks to dismiss this action under Fed. R. Civ. P. 12(b)(6) (the "Motion") on the grounds that (1) CIPA and §§ 638.50-51 are limited to wire telephone-based technology, and (2) Plaintiff lacks Article III standing. The first of these grounds runs counter to well-established bodies of federal and California caselaw; it also relies upon a highly-skewed interpretation of legislative history concerning §§ 638.50-51, which the Court need not entertain under California principles of statutory interpretation. Sentry's second ground simply ignores the Complaint's straightforward allegation that Plaintiff's identifying information such as browser and device information, and a unique ID associated with her, were collected as part of a process that facilitates non-consensual profiling and tracking, and the sale of individuals' private data.

Sentry's additional proposed basis for dismissal, that it is exempt under a subsection of § 638.51 that allows companies that provide messaging and email platforms to the

public, to use a trap and trace device that ***facilitates the operation or maintenance of a communication service***, does not withstand basic scrutiny. Further, the Court ought to reject Sentry's contention that Plaintiff has no claim as she had no reason to visit the Website because it only offers insurance products to *"other businesses."* Memo. of Law in Support of Mot. to Dismiss ("Mot."), ECF No. 17-1, at 1:28-2:1. Section § 638.51 does not require a communication to have been made for any specific reason for its prohibition on trap and trace devices to apply. Further, the contention relies upon assumptions about Plaintiff – namely, that she does not operate any business, and has no interest in forming a business in the future – that may not be considered on a Rule 12(b)(6) motion.

For the reasons set forth herein, the Court should deny the Motion. If the Court determines that additional allegations are required for Plaintiff to state a claim under § 638.51, Plaintiff respectfully requests that she be granted leave to amend the Complaint.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The First Amended Complaint (the "FAC") alleges that Defendant installed and uses the Demandbase SDK on the Website, which meets the definition of a trap and trace device under § 638.50(c). *See* FAC, ECF No. 15, at ¶¶ 1-2, 16, 25. It further alleges that when Plaintiff visited the Website on February 11, 2025, and at that time, due to the operation of the Demandbase software, "her identifying information [ . . . ] was sent to Demandbase [ . . . ] for de-anonymization, profiling, targeting and ongoing tracking of browsing activity." *Id.*, ¶ 32. The transfer of data to Demandbase occurred "by way of electronic

impulses" from the device she used to visit the Website. *Id.* Further, Plaintiff alleges, on information and belief, that:

> Demandbase took Plaintiff's information and added the information to its profile of Plaintiff. In turn, Defendant received other relevant data obtained by Demandbase regarding Plaintiff. Demandbase could then use data regarding Plaintiff's visit to further profile Plaintiff, with the objective of monetizing this data by selling or licensing it to other entities, including law enforcement.

*Id.*, ¶ 33.

As explained in the FAC, this "fingerprinting" conducted by data brokers such as Demandbase allows them "to ascertain the identity of a visitor to a website by plotting hundreds of personal identifiers, including a user's geolocation, device information, identification and cross-referencing of malicious cookies installed on their devices, and other traits evident from a user's browser." FAC, ECF No. 15, ¶ 17. "Once the data is collected it is consolidated and organized into comprehensive profiles that may include thousands of attributes per individual. The data is then cross-referenced and linked using unique identifiers like device IDs and cookies to unify data about individual users from multiple sources." *Id.*, ¶ 20. In other words, data brokers, including Demandbase specifically, can compile an individual's behavior across multiple websites through cookie technology or IP addresses. *Id.,* ¶¶ 18-21. Data brokers are able to use such profiles to

monetize the private data of individuals visiting websites while in California. *Id.*, ¶¶ 22-23.

At this juncture, only Demandbase and Defendant would have access to evidence showing that this has occurred as a result of Plaintiff's visit to the Website. This does not minimize the threat Plaintiff is under in terms of dissemination of her data and a comprehensive profile of her activity on the internet to additional parties.

Demandbase's data collection facilitated by Defendant's conduct, occurred without Plaintiff's consent; indeed, Plaintiff was at no time informed of such activity. *Id.*, ¶ 39. While Plaintiff knows that identifying information about her was transmitted to Demandbase on her visit, the extent of Demandbase's profiling activity concerning her, and the use and monetization of her profile by Defendant and Demandbase, is outside her knowledge prior to discovery. *See id.*, at ¶¶ 38-39.

## III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "It is axiomatic that

the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. THE COURT SHOULD DENY THE MOTION TO DISMISS

### A. Defendant's Position that the CIPA Provisions at Issue Here Are Limited To Telephone Technology Is Erroneous and Unsupported by Authority.

#### 1. The Broad Language of §§ 638.50-51 Encompasses Prohibited Devices Comprised of Software on Websites.

Federal courts apply state rules of statutory construction when interpreting a statute from that state. *See In re Lares*, 188 F.3d 1166, 1168 (9th Cir. 1999). The first task entailed in such construction under California law is to "scrutinize the actual words of the statute, giving them a plain and commonsense meaning." *Cal. Tchrs. Assn. v. Governing Bd. of Rialto Unified Sch. Dist.*, 14 Cal. 4th 627, 633 (1997). "Words used in a statute should be given the meaning they bear in ordinary use. If the language is clear and unambiguous, there is no need for construction, ***nor is it necessary to resort to indicia of the intent of the Legislature***." *United Medical Management Ltd. v. Gatto* 49 Cal. App. 4th 1732, 1737-38 (2016) (emphasis supplied); *accord People v. Snook*, 16 Cal. 4th 1210, 1215 (1997); *cf. Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1121 (9th Cir. 2011) (For purposes of statutory interpretation, "[u]nder the 'plain meaning' rule, [w]here the language [of a statute] is plain and admits of no more than one meaning[,] the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." (quoting *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 878 (9th Cir. 2001) (en banc))).

CIPA, Penal Code Chapter 1.5, which includes Penal Code §§ 630-638.55, (1) concerns the protection of privacy generally, (2) is entitled, "Invasion of Privacy," and (3) does not contain any express limitation to telephone communications or technology. As Cal. Penal Code § 630 (emphasis added) states, "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties." Application of § 638.51 to commercial surveillance software can hardly be viewed as inconsistent with the broad, forward-looking legislative intent behind CIPA.

Sections 638.50 and 638.51 are broadly and unequivocally worded so as to include software and Internet technology within their scope; moreover, neither include "telephone" or related words. Section 638.50 defines "trap and trace device" as a process that "captures the incoming electronic [ . . . ] impulses that identify [ . . . ] routing, addressing or signaling information that [in turn is] "reasonably likely to identify the source of a[n] "electronic communication." CIPA defines "electronic communication" as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio [and] electromagnetic [ . . . ] system." Penal Code § 629.51(a)(2).[1] Devices

[1] The Ninth Circuit and this Court routinely interpret the phrase "electronic communication" as used in federal communications statutes to include communication over the internet. *See, e.g., United States v. Rosenow*, 50 F.4th 715, 724-25 (9th Cir. 2022) ("Yahoo and Facebook are electronic communication service providers (ESPs) that provide online private messaging services."); *Vishal Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1052-53 (N.D. Cal. 2025) (Plaintiffs had sufficiently alleged defendant website operator violated the ECPA provision prohibiting interception of an electronic communication where they alleged that the Defendant intercepted their ***internet*** communications with the website).

such as computers and smartphone communicate to other devices (such as website servers) through a combination of wire, radio and electromagnetic systems. Further, "electronic impulses" – referenced in § 638.50 – facilitate the communication between such devices and the server of a website.

Here, the Complaint alleges that impulses from a Website visitor's device provide "routing, addressing or signaling information," such as browser type and data about the device, for example, and allow the Website to appear on the device. FAC, ECF No. 15, at ¶¶ 15, 17, 27, 32-33, 41-42. As further alleged, such "routing, addressing or signaling data" is reasonably likely to identify the source of the communication. *Id.*

Numerous California federal courts have ruled that §§ 638.50-51 apply to software-based trap and trace devices or pen registers operating on websites that act to identify the source of internet communications, based on the plain language of these statutes. *See, e.g., Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076-77 (C.D. Cal. July 25, 2024) (trap and trace device); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 LX 193005, at *16 (C.D. Cal. Apr. 3, 2025) (same); *Riganian v. LiveRamp Holdings, Inc.,* No. 25-cv-00824-JST, 2025 LX 251568, at *34-37 (N.D. Cal. July 18, 2025) (pen register); *Shahnaz Zarif v. Hwareh.com, Inc*., No. 23-cv-0565-BAS-DEB, 2025 LX 103944, at *30-31 (S.D. Cal. Feb. 12, 2025) (same); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 LX 273067, at *30 (N.D. Cal. July 14, 2025) (same); *Mirmalek v. Los Angeles Times Communs. LLC*, No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same).

Numerous judges of the Los Angeles County Superior Court have reached the same conclusion in extensively-reasoned decisions. *See, e.g.*, *Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 (July 31, 2024), at 3-5 (Ex. 1 to Plaintiff's Request for Judicial Notice filed concurrently herewith ("RJN")); *Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024), at 3 (RJN Ex. 2); *Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024), at 3 (RJN Ex. 3); *Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024), at 2 (RJN Ex. 4).

**2. Defendant's Statutory Text and Structure Argument, Grounded in the Language in Penal Code §§ 638.52-53, Fails.**

Defendant challenges the numerous decisions affirming that the scope of §§ 638.50-51 extends to websites and software by arguing only that provisions ***related to*** the ones at issue here, which address the obtaining of court orders to authorize trap and trace devices, contain references to phone lines. (*See* Mot., ECF No. 17-1, at 3:17-4:26.) The provisions in §§ 638.52(d)(1) and (3) cited by Defendant merely require that a court order authorizing use of a trap and trace device that "is to be attached" to a phone line must specify the listed name and number for that line. Nothing about this procedural requirement alters the definition of trap and trace devices in § 638.50(c) or even limits court orders authorizing trap and trace devices to ones relating to phone lines. (Even if it did, that would only mean that law enforcement cannot legally use trap and trace devices to surveil citizen communications over the internet.) It is hardly surprising that the Legislature never

intended to authorize non-law enforcement actors such as Defendant to seek orders authorizing their use of trap and trace devices on internet users in California. The Legislature's view concerning the propriety of private actors obtaining orders authorizing them to trap and trace individuals is evidenced by the fact that § 638.51's prohibition of trap and trace devices expressly reaches any "person" using or installing such devices, while only a "peace officer" may apply for court orders authorizing the use of such devices under §§ 638.52-53.

Defendant's reliance on *Application of U.S. of Am. For an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995), in this regard (Mot., ECF No. 17-1, at 5:11-20), is unfounded. That case addressed the federal pen register statute, 18 U.S.C. §§ 3121 *et seq.*, and was issued when the definition of a pen register for purposes of that statute was "limit[ed] to a device 'which records or decodes electronic or other impulses which *identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached*….'" *Id.*, 885 F. Supp. at 200 (emphasis added) (quoting 18 U.S.C. § 3127(3) ***prior to its amendment in 2001, which removed the language referencing telephone lines and numbers dialed***). By contrast, neither the definition of a trap and trace device or a pen register found in Penal Code § 638.50 references telephone lines or the dialing of numbers.

**3. Defendant's Citation to the Legislative History of §§ 638.50-51 is Unavailing.**

As an initial matter, the Court should summarily disregard Defendant's legislative intent argument (Mot., ECF No. 17-1, at 7-10). Because the plain language of § 638.51 is unambiguous, the Court should not look beyond that language in determining the Legislature's intent behind the statute; this is explained by the very case Defendant cites to support its reliance on the "legislative history of sections 638.50-638.53": *Kavanaugh v. W. Sonoma Cty. Union High Sch. Dist.*, 29 Cal.4th 911, 920 (2003). Mot., ECF No. 17-1, at 7:2-4. In *Kavanaugh*, the Court of Appeals held that where a statute's language is ***not*** unambiguous, and where there are two "equally plausible, commonsense readings of the statutory language" at issue, a court may "resort to extrinsic sources to determine the Legislature's intent[.]" *Id.*, 29 Cal. 4th at 919. Yet the Motion fails to identify any ambiguity in § 638.51's plain language or any "equally plausible, commonsense reading of the statutory language" other than that proposed by Plaintiff here. Defendant's reliance on *Kavanaugh* in proposing that the Court conduct a complex inquiry into the legislative intent behind § 638.51 is misplaced.

Moreover, the legislative history cited by Defendant is contradicted by the plain language of § 638.51. Further, numerous analyses for Assembly Bill 929 (2015) relied upon by Defendant in support of its narrow interpretation of §§ 638.50 and 638.51 are not determinative as to legislative intent concerning the use of surveillance software ***on commercial websites***. The analyses focus on the grounding of orders authorizing the use

of trap and traces and pen registers in probable cause findings. The legislative materials to which Defendant cites are devoid of any language evidencing legislative intent to limit the application of § 638.51 to telephone lines. Repeated references to "telephone surveillance" in the materials indicate merely that surveillance devices being used by law enforcement primarily in 2015 and 2016 utilized telephones. Moreover, the fact that § 638.51's prohibition of pen registers or trap and trace devices expressly reaches any "person" using or installing such devices demonstrates that in enacting the statute, the California Legislature was not focused solely on law enforcement or its primary form of surveillance.

Defendant also cites to legislative materials relating to AB 1924 (2016), a bill that amended California's Electronic Communication Privacy Act ("ECPA") (Cal. Penal Code §§ 1546 *et seq.*). *See* Mot., ECF No. 17-1, at 8:26-9:23. As the Motion reveals (*id.*, at 9:2-5;8-11), the amendments relate to law enforcement surveillance and the production of electronic communication information ***pursuant to a pen register or trap and trace device order***. See *id.*, at 13:18-21. Unsurprisingly, the materials focus on telephone numbers and "call detail records," as AB 1924 related entirely to law enforcement surveillance. AB 1924 and the legislative materials do not address "persons" other than law enforcement officers and telecommunication service providers who participate in such surveillance. Accordingly, they have no bearing on the question of the application of § 638.51 to surveillance techniques or technology used by private actors, including website operators such as Defendant.

### 4. Application of § 638.51 to Websites Is Consistent with the Legislature's Intent and Would Not Have Unreasonable Results.

Because of the clear and unambiguous language of §§ 638.50 and 638.51, the Court need not consider whether the application of these CIPA provisions here would have unreasonable consequences that the Legislature never intended – something Defendant contends. (Mot., ECF No. 17-1, at 9:24-10:22.) This line of inquiry applies only "to the extent [that an] examination of the statutory language leaves uncertainty [ . . . ]." *Copley Press, Inc. v. Superior Court*, 39 Cal. 4th 1272, 1291 (2006). No such uncertainty is present here. Moreover, the *Copley* court explained that it would "not adopt '[a] narrow or restricted meaning' of statutory language 'if it would result in an evasion of the evident purpose of [a statute], when a permissible, but broader, meaning would prevent the evasion and carry out that purpose.'" *Id.*, at 1291-92 (quoting *In re Reineger* 184 Cal. 97, 103 (1920)). The Legislature made clear that CIPA was to be applied in a broad manner to protect the privacy of California citizens from all forms of surveillance. *See* Penal Code § 630; *Smith v. LoanMe*, 11 Cal. 5th 183, 199 (2021). Thus, here, *Copley* supports Plaintiff's "permissible but broader" interpretation of §§ 638.50-51 over Defendant's one, which would be restricted to exclude all forms of communication not based in telephone technology. An interpretation of § 638.50 that would exclude website surveillance that facilitates ongoing tracking of individuals' internet browsing and the sale of extensive

profiles of individual consumers from possible trap and trace devices would itself be absurdly inconsistent with the intent behind CIPA.[2]

**B. The Exemption Set Forth In § 638.51(b)(1) Does Not Apply Here.**

Defendant erroneously contends (Mot., ECF No. 17-1, at 11:1-20) that it is exempt from liability for the trap and trace device initiated by the Demandbase DBSDK on its Website. The exemption applies only to a "provider of electronic…communication service," which Defendant is not under the allegations of the FAC. Plaintiff alleges that Defendant is an insurance provider and insurance news source. FAC, ECF No. 15, at ¶ 11. Defendant seeks to distract from the Court's inability, on a motion to dismiss, to consider facts contradicting the Complaint, *see Caltex Plastics,* 824 F.3d at 1159, by citing cases in which courts held that other website operators qualified as electronic communication service providers. Qualification of a defendant as such a provider is a question of fact that the Court is without authority to determine on this motion. Defendant has failed to cite a

[2] The Court should reject Defendant's unexplained suggestion that a broad interpretation of § 638.51 "undermin[es] the CCPA." Mot., ECF No. 17-1, at 9:25. The California Consumer Privacy Act or "CCPA" expressly states it is "intended to further the constitutional right of privacy and ***to supplement existing laws*** relating to consumers' personal information, …" Cal. Civ. Code § 1798.175 (emphasis added). It further states: "Wherever possible, law relating to consumers' personal information should be construed to harmonize with the provisions of this title, but in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id.*; *see also, e.g., Mirmalek*, 2024 WL 5102709, at *5. This framework ensures that the CCPA supports and strengthens existing privacy laws such as § 638.51 and other CIPA provisions, without undermining their enforcement.

single case holding that ***as a matter of law, any and every website operator*** qualifies as an electronic communication service provider for purposes of the exemption within § 638.51(b)(1).

Additionally, Defendant simply ignores the FAC's extensive allegations concerning the nature of the "fingerprinting" and "de-anonymization" effected by the Demandbase DBSDK, by suggesting that "Defendant's conduct" (Mot., ECF No. 17-1, at 11:3) consists of the collecting or recording of ***only IP addresses of Plaintiff and the proposed class***. The FAC alleges that operation of the Demandbase software on Defendant's Website to identify and profile visitors such as Plaintiff entails the capture of data other than IP information. FAC, ECF No. 15, at ¶¶ 26-30; 32-33. These include the geolocation of a visitor's device, information about her device and browser, a "unique cookie ID" associated with her, the webpage from which she was referred to Defendant's website, and tracking data. *See id.* Defendant has not argued – nor could it on a motion to dismiss – that any of these other data are necessary for it to operate its Website.

Therefore, even were the Court to conclude that Defendant could be considered eligible for application of the § 638.51(b)(1) exemption, the allegations of the Complaint preclude a finding on the instant motion that the exemption applies. Plaintiff has alleged that the Demandbase DBSDK on the Website causes surveillance that extends beyond what is required "[t]o operate, maintain, and test" Defendant's website.

### C. <u>Plaintiff Has Article III Standing and Statutory Standing Under CIPA.</u>

#### 1. Plaintiff Sustained a Violation of Her Right of Privacy, a Constitutionally Cognizable Injury Under Governing Caselaw.

As demonstrated above, Plaintiff has alleged that private information identifying her was collected due to Defendant's use of the Demandbase DBSDK on the Website. Further, she has alleged that such data can be used to create a profile, and that the profile can be used to track her ongoing internet activity and makes her data more attractive to potential purchasers.

Plaintiff suffered a constitutionally cognizable injury when Defendant violated her right to privacy. Violations of individuals' rights to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or her person.'" *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 598-599 (9th Cir. 2020) (*"In re Facebook"*). In *In re Facebook*, it was found that Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *Id.* at 599. The Ninth Circuit concluded that such surreptitious "unauthorized exploration" of someone's private life and information constitutes a cognizable Article III injury. *Id.*

**2. Substantial Authority Supports the Finding That Plaintiff Has Article III and Statutory Standing Based on Her Allegations Surrounding Her Data Exposure to Demandbase Through the Website.**

The Ninth, Second and Third Circuits have all found plaintiffs to have sufficiently alleged injuries in fact for purposes of Article III and statutory standing where they alleged that defendants had caused monitoring of plaintiffs' web browsing across multiple websites, the building of detailed profiles based on plaintiffs' internet activity, and the related dissemination of such browsing data – precisely the type of activity Plaintiff alleges here. *See In re Facebook*, 956 F.3d at 599 (plaintiffs adequately alleged a concrete harm where the defendant was able to view individual users' profiles and examine "an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives"); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019) ("*In re Google*") (court found standing where plaintiffs alleged unauthorized tracking and sale of browsing histories, reasoning that the loss of control over personal data was itself an injury); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) (affirming district court's finding that plaintiffs had sufficiently alleged a concrete injury for purposes of Article III standing where they alleged that defendant had engaged in the unauthorized accessing and monitoring of their web-browsing activity,

noting that such activity "implicates harms similar to those associated with the common law tort of intrusion upon seclusion").

The instant action is remarkably similar to the allegations the Ninth Circuit found sufficient to identify an injury in fact in *In re Facebook*. There, the Court noted it would be simply "untenable" to think that "federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data." *In re Facebook*, 956 F.3d at 599 (quoting *In re Google*, 934 F.3d at 325). Defendant's suggestion that Plaintiff has not sufficiently alleged a concrete injury despite detailing the standard conduct of data brokers and her exposure to Demandbase via the operation of the Demandbase DBSDK operating on the Website, supports just such an "untenable result." That Defendant fails to even acknowledge the specific allegations in the Complaint concerning the transmission of Plaintiff's identifying data to Demandbase reflects its disingenuous effort to downplay the significant ramifications of the surveillance in which it has agreed to participate.

Numerous California district courts have followed the approach of *In re Facebook*, *In re Google*, and *Pulsepoint*. *See, e.g., Cantu v. Tractor Supply Co.*, No. 2:23-CV-3027-HDV-JC, 2024 WL 1601257, at *2 (C.D. Cal. Mar. 21, 2024) (finding it sufficient to establish a concrete injury under *TransUnion* when a website's disclosure "allowed Google (and any ordinary person) to readily identify Plaintiff's video-watching behavior ... for the purpose of retargeting Plaintiff in connection with Google advertising campaigns") (citing and discussing additional cases). Binding Ninth Circuit precedent explains that various rights codified in CIPA ***are substantive and not procedural rights*** that are sufficient for

Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought here codify substantive rights to privacy.") (citations omitted); *see also Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024). Indeed, when

> a legislature had declared that an injury is legally redressable, courts afford due respect to that decision. A legislature may elevate a legally protected interest into an injury for Article III purposes, though it cannot use its lawmaking power to transform something that is not remotely harmful into something that is.

*Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553, at *2 (N.D. Cal. Aug. 23, 2024) (cleaned up); *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023). Moreover, multiple courts have concluded that, based on binding Ninth Circuit precedent, a violation of CIPA creates a substantive right a violation of which is sufficient for Article III standing. *See, e.g., D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *3 (S.D. Cal. Oct. 24, 2023).

It is also clear that Plaintiff's allegations concerning the collection of her data for profile creation and browsing surveillance are similarly sufficient to constitute an injury for purpose of establishing ***Plaintiff's statutory standing under Section 637.2***. *See, e.g., Shah*, 2024 WL 4539577, at *5 (concluding that plaintiffs had sufficiently alleged statutory standing because they had "plausibly alleged that they were injured by being tracked across multiple visits for marketing and advertising purposes, and that they did not expect or agree

to such tracking."); *see also Mirmalek*, 2024 WL 5102709, at *4 (same); *Lesh v. Cable News Network, Inc.*, No. 24 CIV. 03132 (VM), 2025 WL 563358, at *3 (S.D.N.Y. Feb. 20, 2025) (concluding that statutory standing under Cal. Penal Code § 638.51 was established because "Lesh alleges that CNN installed Trackers, owned by third-party entities, which then received his IP address for purposes of advertisement placement.").

The California cases cited by Defendant to suggest that Plaintiff has no standing to sue under CIPA are readily distinguishable. In contrast to *Limon v. Circle K Stores, Inc.*, 84 Cal. App. 5th 671 (2022), here Plaintiff has alleged that her private data and internet activity is being amassed into a profile that threatens to be sold. In *Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811 (Cal. Sup. Ct. July, 9, 2024) the Court found that the plaintiff had only alleged that her IP address was stolen; by contrast, this case alleges the creation of a profile based on all sorts of identifying data other than IP address, and the ongoing tracking of browsing activity. And *Casillas v. Transitions Optical, Inc.*, Case No. 23STCV30742 (Cal. Sup. Ct. April 23, 2024), in which the complaint ***failed to allege that any of the plaintiff's information had been captured***, is utterly inapposite.

## V. CONCLUSION

For the reasons stated herein, the Court should deny Defendant's Motion to Dismiss. In the alternative, should the Court find the Complaint deficient, Plaintiff requests leave to amend.

DATED: September 16, 2025

**TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

*Attorneys for Plaintiff Dana Hughes*

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Dana Hughes, certifies that this brief does not exceed twenty-five pages, which complies with the page limit of the Court's Standing Order § 9(d).

DATED: September 16, 2025

**TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

*Attorneys for Plaintiff Dana Hughes*